1 | LATHAM & WATKINS LLP
2 |    David A. Barrett (Bar No. 138096)
   *david.barrett@lw.com*
3 |    Daniel Scott Schecter (Bar No. 171472)
   *daniel.schecter@lw.com*
4 |    James H. Moon (Bar No. 268215)
   *james.moon@lw.com*
5 | 355 South Grand Avenue
6 | Los Angeles, California 90071-1560
Telephone:  +1.213.485.1234
7 | Facsimile:   +1.213.891.8763
8 | LATHAM & WATKINS LLP
9 |    Thomas J. Heiden (*pro hac vice*)
   *thomas.heiden@lw.com*
10 |    Michael J. Nelson (*pro hac vice*)
   *michael.nelson@lw.com*
11 | 233 South Wacker Drive, Suite 5800
12 | Chicago, Illinois 60606-1304
Telephone:  +1.312.876.7700
13 | Facsimile:   +1.312.993.9767

14 | Attorneys for Defendants

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOB GRANT; DR. CLINTON JONES; WALTER ROBERTS, III; MARVIN COBB; and BERNARD PARRISH, <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION, a Virginia corporation; and NATIONAL FOOTBALL LEAGUE PLAYERS INCORPORATED d/b/a NFL PLAYERS, a Virginia corporation, <br><br> Defendants. | Case No. CV11-03118 RGK (FFMx) <br> Hon. R. Gary Klausner <br><br> **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> [*Proposed Statement of Uncontroverted Facts and Conclusions of Law; Request for Judicial Notice; Declarations of Andre Collins, Dexter Santos, and Daniel Scott Schecter; and Proposed Judgment Filed Concurrently*] <br><br> Date:   May 21, 2012 <br> Time:   9:00 a.m. <br> Place:  Courtroom 850 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on May 21, 2012, at 9:00 a.m., or as soon thereafter as the matter can be heard in Courtroom 850 of the above-entitled Court, located at 255 East Temple Street, Los Angeles, California 90012, defendants National Football League Players Association ("NFLPA") and National Football League Players Incorporated, d/b/a NFL PLAYERS (collectively, "Defendants"), will and hereby move the Court to enter summary judgment in favor of Defendants on all claims in the First Amended Complaint ("FAC") of plaintiffs Bob Grant, Dr. Clinton Jones, Walter Roberts III, Marvin Cobb, and Bernard Parrish (collectively, "Plaintiffs").

This Motion is made on the grounds that there is no genuine issue of material fact with respect to Plaintiffs' claim for breach of fiduciary duty (or their derivative accounting claim) for each of the following reasons:

(1)   There is no genuine issue of material fact as to whether Defendants owed Plaintiffs a fiduciary duty with respect to licensing based on an agency relationship because Plaintiffs cannot establish any of the three essential elements of a licensing agency relationship:

    (a)   Plaintiffs' assent to a licensing agency relationship;

    (b)   Plaintiffs' right to control Defendants' licensing activities; or

    (c)   Defendants' consent to any licensing agency relationship subject to Plaintiffs' control; and

(2)   There is no genuine issue of material fact as to whether Defendants breached any purported fiduciary duty towards Plaintiffs.

For each of these reasons, Defendants are entitled to judgment as a matter of law on Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 56.

Defendants' Motion is based on this Notice, the Memorandum of Points and Authorities attached hereto, the Proposed Statement of Uncontroverted Facts and Conclusions of Law, Request for Judicial Notice, the Declarations of Andre

LATHAM&WATKINS<sup>LLP</sup>  LA\2607511.9

ATTORNEYS AT LAW
LOS ANGELES

1

DEFENDANTS' NOTICE OF MOTION
FOR SUMMARY JUDGMENT
CV11-03118 RGK (FFMx)

1  Collins, Dexter Santos, and Daniel Scott Schecter, and exhibits thereto, filed

2  concurrently herewith, the pleadings, files, and records in this action, and such

3  further evidence and argument as the Court may receive.

4      This Motion is made after the conference of counsel pursuant to Local Rule

5  7-3, which took place on April 6, 2012.

6  Dated:  April 18, 2012                    Respectfully submitted,

7                                            LATHAM & WATKINS LLP

8                                            By /s/ Daniel Scott Schecter
9                                               Daniel Scott Schecter
                                              Attorneys for Defendants
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................... 1

II.   FACTUAL BACKGROUND ................................................................... 2

III.  ARGUMENT ............................................................................................ 3

    A.   Plaintiffs Cannot Establish Essential Elements Of Their
        Claims. ......................................................................................... 3

        1.   Plaintiffs Cannot Establish The Existence Of A
             Fiduciary Duty Based On A Licensing Agency
             Relationship. ..................................................................... 4

             a.   Plaintiffs Did Not Assent To An Agency
                 Relationship With Defendants With Respect
                 To Licensing. .......................................................... 5

                 (1)   Plaintiffs Did Not Join The NFLPA
                       For Purposes Of Licensing. .................................. 5

                 (2)   Plaintiffs Did Not Give Defendants
                       Permission To Act As Their Agents. .................... 9

                 (3)   Plaintiffs Did Not Communicate With
                       Defendants About Licensing. ............................. 10

                 (4)   Plaintiffs Rejected Opportunities To
                       Enter Into Express Licensing
                       Agreements. ....................................................... 11

             b.   Plaintiffs Did Not Have Nor Exercise Any
                 Control Over Defendants' Purported
                 Licensing Duties. ................................................... 12

             c.   Defendants Did Not Consent To Act As
                 Plaintiffs' Licensing Agents. ............................... 16

             d.   Plaintiffs Are Not In Privity With NFL
                 PLAYERS. ............................................................ 17

        2.   Plaintiffs Cannot Establish A Breach Of Fiduciary
             Duty. .............................................................................. 17

IV.  CONCLUSION ....................................................................................... 19

LATHAM&WATKINS LLP   LA\2607511.9
ATTORNEYS AT LAW
LOS ANGELES

i

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CV11-03118 RGK (FFMx)

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Barbara A. v. John G.*,
145 Cal. App. 3d 369, 193 Cal. Rptr. 422 (1983) .......................................... 19

*Blair Foods, Inc. v. Ranchers Cotton Oil*,
610 F.2d 665 (9th Cir. 1980) ........................................................................ 18

*Brown v. Nat'l Football League Players Ass'n*,
No. 11-01953, ___F.R.D.___, 2012 WL 1057995, (C.D. Cal. Mar.
29, 2012).................................................................................................... 4, 5

*Celotex Corp. v. Catrett*,
477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ................................ 3

*Cislaw v. Southland Corp.*,
4 Cal. App. 4th 1284, 6 Cal. Rptr. 2d 386 (1992) .......................................... 13

*Emery v. Visa Int'l Serv. Ass'n*,
95 Cal. App. 4th 952, 116 Cal. Rptr. 2d 25 (2002)................................... 4, 13

*Exec. Sec. Mgmt. v. Dahl*, No. 09-9273,
2011 U.S. Dist. LEXIS 132538 (C.D. Cal. Nov. 15, 2011) ........................... 12

*Gerhardt v. Weiss*,
247 Cal. App. 2d 114, 55 Cal. Rptr. 425 (1966) ............................................ 19

*Hanks v. Carter & Higgins, Inc.*,
250 Cal. App. 2d 156, 58 Cal. Rptr. 190 (1967) .............................................. 5

*Hill v. Citizens Nat'l Trust & Sav. Bank*,
9 Cal. 2d 172 (1937) ....................................................................................... 4

*Hillen v. Indus. Accident Comm'n*,
199 Cal. 577 (1926) ...................................................................................... 15

*ING Bank v. Ahn*,
758 F. Supp. 2d 936 (N.D. Cal. 2010)............................................................ 13

*Intermedics, Inc. v. Ventritex, Inc.*,
822 F. Supp. 634 (N.D. Cal. 1993).................................................................. 19

*Janis v. California State Lottery Comm'n*,
68 Cal. App. 4th 824, 80 Cal. Rptr. 2d 549 (1998) .......................................... 1

*Kennedy v. Allied Mut. Ins. Co.*,
952 F.2d 262 (9th Cir. 1991) ......................................................................... 10

*Maloney v. Rhode Island Ins. Co.*,
115 Cal. App. 2d 238 (1953) ........................................................................... 4

LATHAM&WATKINS LLP   LA\2607511.9
ATTORNEYS AT LAW
LOS ANGELES

i

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CV11-03118 RGK (FFMx)

*Michelson v. Hamada*,
    29 Cal. App. 4th 1566, 36 Cal. Rptr. 2d 343 (1994) .................................. 15, 19

*Minskoff v. Am. Express Travel Related Servs. Co.*,
    98 F.3d 703 (2d Cir. 1996) ..................................................................... 4, 5

*Noggle v. Bank of Am.*,
    70 Cal. App. 4th 853, 82 Cal. Rptr. 2d 829 (1999) .................................. 19

*Oasis W. Realty, LLC v. Goldman*,
    51 Cal. 4th 811, 124 Cal. Rptr. 3d 256 (2011) ......................................... 3

*St. Paul Ins. Co. v. Indus. Underwriters Ins. Co.*,
    214 Cal. App. 3d 117, 262 Cal. Rptr. 490 (1989) .................................... 16

*Taylor v. List*,
    880 F.2d 1040 (9th Cir. 1989) ................................................................. 18

*Twomey v. Mitchum, Jones & Templeton, Inc.*,
    262 Cal. App. 2d 690, 69 Cal. Rptr. 222 (1968) ...................................... 19

*Vai v. Bank of Am. Nat'l Trust & Sav. Ass'n*,
    56 Cal. 2d 329, 15 Cal. Rptr. 71 (1961) .................................................. 19

*Violette v. Shoup*,
    16 Cal. App. 4th 611, 20 Cal. Rptr. 2d 358 (1993) .................................. 17

*Whittaker Corp. v. Execuair Corp.*,
    736 F.2d 1341 (9th Cir. 1984) ................................................................. 19

## STATUTES

Cal. Civ. Code § 2298 ......................................................................................... 4

Cal. Civ. Code § 2334 ......................................................................................... 4

Cal. Civ. Code § 2355 ....................................................................................... 16

## OTHER AUTHORITIES

Fed. R. Civ. P. 56 ................................................................................................ 3

Restatement (Third) of Agency § 3.03 & cmt. c .................................................. 4

LATHAM&WATKINS LLP  LA\2607511.9
ATTORNEYS AT LAW
LOS ANGELES

ii

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CV11-03118 RGK (FFMx)

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This former putative class action now consists of five former professional football players' individual claims for breach of fiduciary duty—each of which fails because no such duty was owed.[1]  The uncontroverted evidence establishes that Plaintiffs' foundational allegation—that a licensing agency relationship with Defendants National Football League Players Association ("NFLPA") and National Football League Players Incorporated, d/b/a NFL PLAYERS, giving rise to fiduciary duties arose by virtue of each Plaintiff's "decision" to "join" the NFLPA for purposes of licensing his name and likeness—has no basis in fact:

- Not one Plaintiff had a licensing agreement with either Defendant during the actionable period;

- Not one Plaintiff "joined" the NFLPA for purposes of licensing, and three were not even members at any point during the actionable period;

- Not one Plaintiff consented to either Defendant representing them for purposes of licensing during the actionable period;

- Not one Plaintiff communicated with either Defendant regarding licensing during the actionable period (and for many of them, not for decades);

- Not one Plaintiff had a right to control the means and manner of either Defendant's purported licensing responsibilities;

- Not one Plaintiff can articulate what either Defendant's purported licensing responsibilities entail; and

- Defendants have repeatedly disavowed any obligation to Plaintiffs with respect to licensing during the actionable period.

These facts absolutely preclude any possible express or implied agency

---

[1]     Plaintiffs' only other claim, for an accounting, is not an independent basis for relief and fails alongside their fiduciary duty claim.  *See Janis v. California State Lottery Comm'n*, 68 Cal. App. 4th 824, 833, 80 Cal. Rptr. 2d 549 (1998).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

LA\2607511.9

1

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CV11-03118 RGK (FFMx)

1  relationship, which is the sole basis for Plaintiffs' fiduciary duty claims.  Further,

2  even if a duty could be inferred, Plaintiffs' testimony reveals that any purported

3  breaches within the actionable period are unsupported by admissible evidence.  For

4  each of these reasons, Defendants are entitled to summary judgment.

5  **II.    FACTUAL BACKGROUND**

6      Plaintiffs, five former professional football players, allege the existence of a

7  fiduciary duty premised on a licensing agency relationship, which purportedly

8  arose "[b]y virtue of the retired players' membership in the NFLPA."  (First Am.

9  Compl., ECF No. 13 ("FAC") ¶ 20.)  NFLPA membership for a former player

10  requires the payment of annual dues, or express excusal of such dues for a

11  recognized reason (*e.g.*, attending the NFLPA's annual former player convention).

12  (Uncontroverted Fact ("UF") No. 1.)  Only Plaintiffs Clinton Jones and Marvin

13  Cobb qualified as NFLPA members during the four years preceding the filing of

14  this action.  (UF Nos. 5 & 7.)

15      • Plaintiff Walter Roberts III retired in 1970 and never paid membership

16        dues to the NFLPA nor had them excused.  (UF No. 5(a).)

17      • Plaintiff Bob Grant retired in 1971 and paid annual dues one time in

18        1993, and never had his dues excused.  (UF No. 5(b).)

19      • Plaintiff Bernard Parrish retired in 1966 and paid annual dues three times,

20        in 1996, 1999, and last in April 2005, and never had his dues excused.

21        (UF No. 5(c).)

22      In 2007, Parrish and Roberts filed a class action against Defendants

23  captioned *Adderley v. NFLPA*, No. 07-00943 WHA (N.D. Cal.).[2]  (UF No. 19.)

24  There, plaintiffs alleged that Defendants "breached a fiduciary duty to the *Adderley*

25  Class by failing to pursue licensing opportunities on behalf of the retired players."

26  (FAC at 2.)  The *Adderley* class was composed of former players who signed a

27

28

[2]    Plaintiffs actively followed the *Adderley* proceedings.  Indeed, after the case ended, each Plaintiff in this case sued class counsel in *Adderley* for malpractice for excluding them from the lawsuit.  (RJN, Ex. I.)

1   particular licensing contract with Defendants called a Group Licensing

2   Authorization form ("GLA"), in effect from February 14, 2003 to February 14,

3   2007.  (*Id.*)  None of the Plaintiffs in this case produced a qualifying GLA, nor

4   were they members of the *Adderley* class.  (*Id.* at 3.)

5        Plaintiffs filed their initial complaint in this case on April 13, 2011, and—to

6   avoid the application of the statute of limitations—conceded that their claims are

7   limited to putative breaches of putative duties during the past four years, *i.e.*, after

8   April 13, 2007 (the "Actionable Period").  (FAC at 3; Req. for Judicial Notice

9   ("RJN"), Ex. L at 5 n.1.)  Plaintiffs are not parties to any GLA or any other

10   licensing contract or agreement with Defendants in effect during any part of the

11   Actionable Period.  (UF No. 17.)  The **sole** basis for Plaintiffs' claims is an alleged

12   licensing agency arising out of Plaintiffs' alleged membership in the NFLPA as a

13   former player.  (FAC ¶¶ 26, 27, 46.)  Moreover, discovery revealed that Plaintiffs'

14   claims (with the exception of particular allegations by Parrish and Roberts) are

15   based entirely on the unsubstantiated assertion that they were "never compensated

16   for appearing in video games."  (UF No. 24.)

17   **III.**   **ARGUMENT**

18       **A.**   **Plaintiffs Cannot Establish Essential Elements Of Their Claims.**

19        To avoid summary judgment, Plaintiffs bear the burden of presenting

20   competent evidence sufficient to establish a triable issue as to each element of their

21   fiduciary duty claim, *i.e.*, (1) the existence of a fiduciary duty, (2) a breach of a

22   fiduciary duty, and (3) damages.  *See Oasis W. Realty, LLC v. Goldman*, 51 Cal.

23   4th 811, 815, 124 Cal. Rptr. 3d 256 (2011).  Because Plaintiffs cannot present

24   evidence sufficient to create a material factual dispute as to any of these elements,

25   their claims fail as a matter of law.  *See* Fed. R. Civ. P. 56; *Celotex Corp. v.*

26   *Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

LA\2607511.9

3

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CV11-03118 RGK (FFMx)

### 1. **Plaintiffs Cannot Establish The Existence Of A Fiduciary Duty Based On A Licensing Agency Relationship.**

Plaintiffs claim that Defendants owe them a fiduciary duty based on a licensing agency relationship, created solely by each Plaintiff's alleged "[m]embership in the NFLPA." (FAC ¶ 26.) Plaintiffs have disclaimed any theory of agency by estoppel or ostensible agency,[3] and thus must present evidence of an "actual" agency based on a knowing and voluntary relationship. *See* Cal. Civ. Code § 2298.[4] Plaintiffs cannot establish an actual agency.

An actual agency requires proof of (i) a manifestation of assent by the principals (Plaintiffs) that the agents (Defendants) take an action; (ii) on the principals' behalf and subject to their control; and (iii) a manifestation of agents' consent to the arrangement. *See Brown v. NFLPA*, No. 11-01953, __ F.R.D. __, 2012 WL 1057995, at *5 (C.D. Cal. Mar. 29, 2012) (Klausner, J.) (RJN, Ex. N). When the essential facts regarding the existence of an agency relationship "are not in conflict and the evidence is susceptible to a single inference, the agency determination is a matter of law for the court." *Emery v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 960, 116 Cal. Rptr. 2d 25 (2002). Here, the undisputed facts

---

[3] Plaintiffs have admitted that they "have not alleged an apparent or ostensible agency." (RJN, Ex. L at 12 n.6.) Even if they did, as stated in Defendants' Motion to Dismiss, an ostensible agency theory, or the identical agency by estoppel theory, is inapplicable to claims between a principal and an agent (RJN, Ex. K at 18-19). *See Maloney v. Rhode Island Ins. Co.*, 115 Cal. App. 2d 238, 244-45 (1953) ("The doctrine of ostensible agency is not here applicable. This is a dispute between a claimed principal, Rhode Island, and a claimed agent, appellants. . . . when the controversy arises between the insurer, as principal, and the broker as agent, the doctrine of ostensible agency has no application."); Cal. Civ. Code § 2334; Restatement (Third) of Agency § 3.03 & cmt. c ("[a]pparent authority holds a principal accountable"). The entire doctrine is premised on estopping a *principal* from denying claims made by a third party. *See Hill v. Citizens Nat'l Trust & Sav. Bank*, 9 Cal. 2d 172, 176 (1937) (stating the requirements "before recovery may be had against a principal"). Even if the doctrine could be applicable, Plaintiffs cannot establish any of its elements, namely, showing that "a third party reasonably and in good faith relied" on Plaintiffs' intentional or negligent actions, or the third party's "reliance resulted in a detrimental change" in their position. *See Minskoff v. Am. Express Travel Related Servs. Co.*, 98 F.3d 703, 708 (2d Cir. 1996).

[4] California law can be applied because this case is brought by five individuals, four of whom lived in California for most of the Actionable Period.

---

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

LA\2607511.9

4

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CV11-03118 RGK (FFMx)

1   preclude each Plaintiff from establishing not just one essential element of an

2   agency relationship (which would be dispositive), but all three.

3              **a.    Plaintiffs Did Not Assent To An Agency Relationship**
            **With Defendants With Respect To Licensing.**
4

5          The most glaring flaw in Plaintiffs' case is each Plaintiff's admission that he

6   did not say or do anything to assent to Defendants' alleged representation in a

7   licensing agency relationship.  As the Court recently emphasized, for an agency

8   relationship to exist, "[b]oth principal and agent must create the relationship

9   through their words or conduct."  *Brown*, 2012 WL 1057995, at *5 (citing *Hanks v.*

10  *Carter & Higgins, Inc.*, 250 Cal. App. 2d 156, 163, 58 Cal. Rptr. 190 (1967)

11  ("[F]ormation of an agency relationship is a bilateral matter.  Words or conduct by

12  both principal and agent are necessary to create the relationship[.]").  The

13  principal's words or conduct must allow the agent to "reasonably infer" authority

14  to act on the principal's behalf.  *Minskoff*, 98 F.3d at 708.  Here, the undisputed

15  evidence establishes that Plaintiffs made no manifestation of assent to any

16  licensing relationship with Defendants—through words, conduct, or otherwise.

17             **(1)    Plaintiffs Did Not Join The NFLPA For**
            **Purposes Of Licensing.**
18

19          Plaintiffs claim their assent to a licensing relationship can be inferred from

20  their "decisions to become members of the NFLPA, in connection with the

21  circumstances surrounding those decisions," which included Defendants'

22  purported solicitation of former players for representation "in connection with

23  group licensing opportunities."  (RJN, Ex. L at 13; *accord* FAC ¶¶ 22, 25.)

24  However, in discovery, each and every Plaintiff admitted that this foundational

25  allegation is not true, and this lawyer-contrived theory is unsupported by any real

26  facts.  The undisputed "circumstances" surrounding each Plaintiff's membership

27  history demonstrates a complete absence of assent to any licensing agency

28  relationship.

LATHAM&WATKINS LLP  LA\2607511.9
ATTORNEYS AT LAW
LOS ANGELES

5

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CV11-03118 RGK (FFMx)

*Parrish, Grant, and Roberts were never members of the NFLPA during the Actionable Period.* While their claims are entirely dependent on membership in the NFLPA, three Plaintiffs—Parrish, Grant, and Roberts—were not NFLPA members during any part of the Actionable Period. The payment of annual dues, or excused nonpayment based on certain objective criteria (*e.g.*, attendance at annual convention), is an absolute prerequisite for membership in the NFLPA as a former player. (UF Nos. 1 & 3.) Parrish, Grant, and Roberts have not paid dues for any part of the Actionable Period. (UF No. 5.) They also did not qualify for any excusal of annual dues during that period. (*Id.*) They are not NFLPA members; this fact undermines the foundational (albeit otherwise flawed) premise of their claims.

Moreover, these Plaintiffs each made an affirmative decision to not pay or stop paying dues because of their dissatisfaction with the NFLPA.

- **Parrish** paid dues for a number of years prior to 2007, but affirmatively chose to *stop* paying dues because of his stated dissatisfaction with Defendants' lack of representation of his interests with respect to licensing. (UF No. 6(a) (citing Parrish's *Adderley* Dep. 347:14-348:7 ("Q. But you did not send in a renewal in March of 2006, correct? A. No. Because [the NFLPA] said that [it] did not represent me and that the retired players had no representation. So, why would I pay for something I'm not getting.")).) Parrish now unabashedly asserts a claim entirely at odds with his sworn testimony and actual conduct.

- **Grant** similarly chose to not renew his NFLPA membership and stopped paying annual dues in 1993 because of his general resentment of the NFLPA: "I will not renew my membership with them until ALL MEN WHO PLAYED ARE VESTED in the Pension Plan, until ALL MEN WHO PLAYED HAVE A VOTE FOR LIFE, Until there is RESTITUTION for all monies diverted, taken or stolen from US and

LATHAM&WATKINS LLP   LA\2607511.9
ATTORNEYS AT LAW
LOS ANGELES

6

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CV11-03118 RGK (FFMx)

1    until the antiquated and outdated platform of the Union is replaced." (UF

2    No. 6(b).) Grant now claims to be a member of the union he seeks to

3    overthrow.

4    • **Roberts** never joined the NFLPA as a former member, despite receiving

5        solicitations to join because he "didn't feel that they [the NFLPA] were

6        representing [former players] properly." (UF No. 6(c).)

7    These facts are dispositive. Parrish, Grant, and Roberts were not NFLPA

8  members at any point in the Actionable Period. The assertion that each "joined"

9  the NFLPA to enter into a licensing agency relationship is a complete fabrication.

10  Instead, the incontrovertible evidence demonstrates that these Plaintiffs

11  affirmatively *rejected* membership in the NFLPA, nullifying any possible

12  inference of assent. Parrish, Grant, and Roberts' failure to satisfy the foundational

13  basis for their agency theory mandates summary judgment on their claims in favor

14  of Defendants.

15    ***Cobb and Jones did not join the NFLPA for any purpose related to***

16  ***licensing.*** The two remaining Plaintiffs, Cobb and Jones, were dues-paying

17  members for parts of the Actionable Period. However, both rejected the basic

18  premise of the Complaint—that an agency arose because they joined the NFLPA

19  based on representations that it would seek out licensing opportunities—by

20  unequivocally testifying that they did not join the NFLPA for any reason related to

21  licensing.

22    • **Cobb** expressly admitted that the only reason he joined the NFLPA was

23        to obtain a former player membership directory. (UF No. 7(a).) He

24        repeatedly testified that he did not join the NFLPA for any "particular

25        benefit," or "any other reason" than to get the directory to get into contact

26        with former players. (*Id.* (citing Cobb Dep. 71:2-11 ("Q. Any other

27        reason that you paid dues to the NFLPA [ ] other than getting a copy of

28        the directory? A. I don't think so.")).) While he received many

LATHAM&WATKINS^LLP LA\2607511.9
ATTORNEYS AT LAW
LOS ANGELES

7

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CV11-03118 RGK (FFMx)

solicitations from the NFLPA over the years, they never prompted him to join the NFLPA.  (*Id.* (citing Cobb Dep. 76:9-78:3 ("Q. As you sit here today, do you recall a solicitation that led to you paying the dues?  A. I don't."))).)  Cobb also admitted that he has not had *any communication* with Defendants about licensing in the last 30 years.  (UF No. 13.)  Cobb's admissions preclude any finding that he assented to any licensing agency relationship.

- **Jones** testified that he joined the NFLPA solely to join in "fraternity" with former players, and that he did not believe the NFLPA would provide anything else in return.  (UF No. 7(b) (citing Jones Dep. 44:13-45:14, ("Q. And is there any particular benefit you were looking forward to getting from the NFLPA when you paid the dues in March 2007?  A. Fraternity."))).)  Jones admitted that he did not join the NFLPA to obtain any particular financial benefit, nor because he expected the NFLPA to do anything for him regarding licensing or otherwise—he paid dues numerous times over the years solely to "stay in touch."  (*Id.* (citing Jones Dep. 45:3-14 ("Q. Your main motivation was fraternity?  A. That's what fraternities do is to stay in touch.).)  Indeed, Jones disclaimed *ever* communicating with Defendants about licensing.  (UF No. 12.)  His admissions preclude any possibility of assent to a licensing agency relationship.

The undisputed factual record shows that Plaintiffs did not rely on or assent to any written or verbal solicitation to join the NFLPA to create a licensing agency relationship.[5]  Plaintiffs' theory that their putative membership in the NFLPA is sufficient to demonstrate assent to a licensing agency is factually unsupportable

---

[5]     Even if any Plaintiff tried to claim reliance on the NFLPA's membership solicitations (which none did at deposition), no such solicitation since April 13, 2007, including those produced by Plaintiffs, has ever stated that licensing representation was a benefit of former player membership.  (UF No. 4.)

8

1   and fails as a matter of law.  Summary judgment is warranted on this basis alone.

2   **(2)    Plaintiffs Did Not Give Defendants Permission
3            To Act As Their Agents.**

4       Additionally, Plaintiffs' unequivocal testimony shows that none of them has

5   agreed that Defendants can act on their behalf for purposes of licensing—a further

6   nullification of any reasonable inference of assent to a licensing agency

7   relationship:

8       **Jones** (UF No. 8 (citing Jones Dep. 71:25-72:22)):

9       *Q.  Did  you  ever  give  [Defendants]  permission  to  use  your*

10      *likeness[?]*

11      *A.  No.  [. . .]*

12      *Q.  And  did  you  ever  give  the  [Defendants]  permission  to  have*

13      *others use your likeness . . . ?*

14      *A. No.*

15      **Cobb** (UF No. 9 (citing Cobb Dep. 130:9-12, 137:5-10)):

16      *Q.  Have you ever entered into a direct licensing authorization with*

17      *either [Defendant]?*

18      *A. Not that I'm aware of.  [. . .]*

19      *Q. Now, does [NFL PLAYERS], represent you in any way? . . .*

20      *A.  I don't believe so.  I mean I have not given them permission to.*

21      **Roberts** (UF No. 10 (citing Roberts Dep. 37:12-15)):

22      *Q.  Did  you  ever  authorize  anyone,  whether  [Defendants],  or*

23      *anyone else, that they could put your image in a video game?*

24      *A.  No.*

25      **Parrish** (UF No. 11 (citing Parrish Dep. 173:15-18, 175:12-18, 177:11-12)):

26      *Q.  [Y]our intent and understanding at the time was that you* not

27      *enter into this agreement and authorize the NFLPA to use your*

28      *name and likeness, et cetera; correct?*

Latham & Watkins LLP LA\2607511.9
ATTORNEYS AT LAW
LOS ANGELES

9

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CV11-03118 RGK (FFMx)

*A. Yes. [. . .]*

*Q. [D]id you select one or both of the defendants to be your licensing agent?*

*A. Did I select them?  It wouldn't make any difference.  They're representing me anyway. . . . I mean, they're selling my image whether I like it or not. . . . [T]hey were representing me whether I wanted them to or not.*

Plaintiffs' unequivocal deposition testimony cannot be disregarded, and precludes any reasonable trier of fact from finding that they assented to Defendants acting as their licensing agents.[6]  *See Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991).

### (3)   <u>Plaintiffs Did Not Communicate With Defendants About Licensing</u>.

Not only did Plaintiffs never believe they gave Defendants permission to act as their licensing agents, the parties have not had any substantive conversation or communication on the topic—further eliminating any possibility of assent to a licensing agency relationship based on words or conduct:

- **<u>Cobb</u>** admitted that he *never* had a discussion, call, meeting, or "any form of communication" with Defendants "about the licensing of rights or images" after his retirement from the NFL in 1980.  (UF No. 13.)

- **<u>Jones</u>** unequivocally admitted that he has not had a single discussion, conversation, or communication with Defendants with respect to licensing, his image rights, duties owed, membership solicitations, or any agency relationship.  (UF No. 12.)

- **<u>Roberts</u>** admitted that he has *never* communicated with Defendants about licensing "in writing, by telephone, e-mail, in person, in any way."

---

[6]   Grant has failed to sit for his deposition to date despite Defendants' repeated requests.  Because of his counsel's representations that he is undergoing medical treatment, the parties stipulated to allow Grant to be deposed by May 18, 2012.

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
LOS ANGELES

LA\2607511.9

10

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CV11-03118 RGK (FFMx)

1    (UF No. 14.)

2    • **Parrish** admitted that "I don't talk to the NFLPA."[7]  (UF No. 15.)

3    Plaintiffs' lack of any relevant communications is unsurprising, as each

4    holds deep-seated animosity towards Defendants and admitted that they do not

5    trust Defendants to represent their interests—further establishing the lack of any

6    possible finding of assent.[8]  (UF No. 16 (citing Parrish's *Adderley* Dep. 98:16-99:1

7    ("Q. [I]t is your view that Mr. Upshaw should be compared to people like Caesar,

8    Napoleon, Idi Amin, Hitler, Stalin, Milosevic and Saddam, correct, that's your

9    view?  A. In my opinion, yes.  Absolutely, yes.")); Schecter Decl., Ex. P (Grant:

10   "Those Devils [the NFLPA and NFL] will never voluntarily sit down with us . . .  I

11   am convinced that they are sure that they can just fight us off until every single one

12   of us is dead.")).)

13   Based on their own admissions, Plaintiffs cannot establish the foundational

14   element of assent necessary to establish any duty.  Plaintiffs did and said nothing to

15   indicate that Defendants were authorized to act as Plaintiffs' licensing agents.

16   **(4)    Plaintiffs Rejected Opportunities To Enter Into**
17   **Express Licensing Agreements.**

18   Apart from their admitted lack of assent to a licensing agency relationship

19   with Defendants, Plaintiffs affirmatively rejected opportunities to enter into an

20   express licensing agreement with Defendants.  Over a period of years, Defendants

21   entered into GLAs with a number of former players; 2,074 former players were

22   members of the class certified in *Adderley*.  Those players assented to an express

23   relationship with Defendants based on a written agreement.  In contrast, Plaintiffs

24   here did not enter into any GLA or other agreement offered by Defendants in effect

25   _____

26   [7]    Parrish later alluded to vague conversations with purported NFLPA employees, but cannot identify any by name or whether they were speaking for Defendants, and does not base his claims on these conversations.  (Parrish Dep. 202:22-203:9, 204:18-205:11.)

28   [8]    Most recently, Parrish testified that he believes his phone is being bugged, and he suspects that the NFLPA is responsible.  (Parrish Dep. 43:20-24.)

1  during the Actionable Period.  (UF No. 17.)

2       For instance, Parrish signed multiple GLAs as a former player, but the last

3  one expired by its terms in 1998.  (UF No. 18.)  After that, Parrish admittedly

4  *rejected* the opportunity to enter into another GLA based on his attorney's advice,

5  by tossing it in the trash instead of submitting it to the NFLPA:

6       *Q. Was your not sending it to the NFLPA inadvertent?*

7       *A. Oh, no.  I didn't send it on purpose.*

8       *Q. [] So you did not intend to – ultimately, it was you intent to not*

9            *enter into this [ ] GLA?*

10      *A. Right.  I threw it away.  Yeah.  [. . .]*

11      *Q. [Y]our intent and understanding at the time was that you not enter*

12           *into this agreement and authorize the NFLPA to use your name*

13           *and likeness, et cetera; correct?*

14      *A. Yes.  Since I didn't send – yes.  Since I didn't execute it and send it*

15           *in, I didn't intend to use it.  Yeah.*

16 (Parrish Dep. 171:18-173:14.)  There is no possibility of assent under these

17 circumstances.  *See Exec. Sec. Mgmt. v. Dahl*, No. 09-9273, 2011 U.S. Dist.

18 LEXIS 132538, at *41-42 (C.D. Cal. Nov. 15, 2011) (granting summary judgment

19 for failure to establish assent because the evidence showed plaintiff expressly

20 declined an offer to enter into a relationship with defendant).

21      Based on this uncontroverted record, no reasonable trier of fact could find

22 that Plaintiffs assented to allow Defendants to act as their licensing agents.

23 Summary judgment is warranted solely based on Plaintiffs' inability to establish

24 this essential element of their claims.

25           **b.    Plaintiffs Did Not Have Nor Exercise Any Control**
              **Over Defendants' Purported Licensing Duties.**

26

27      Plaintiffs also cannot establish a triable issue with respect to the second

28 essential element of their agency theory:  there is no evidence showing that

LATHAM&WATKINS LLP  LA\2607511.9
ATTORNEYS AT LAW
LOS ANGELES
12
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CV11-03118 RGK (FFMx)

1   Plaintiffs could "control" Defendants for purposes of licensing.

2       "The law indulges no presumption that an agency exists." *ING Bank v. Ahn*,

3   758 F. Supp. 2d 936, 941 (N.D. Cal. 2010).  To survive summary judgment,

4   Plaintiffs must present evidence capable of supporting an inference of Plaintiffs'

5   "comprehensive and immediate level of 'day-to-day' authority" over Defendants'

6   alleged licensing activities.  *Id.*  It is "the right to control the *means and manner* in

7   which the result is achieved that is significant in determining whether a principal-

8   agency relationship exists." *Cislaw v. Southland Corp.*, 4 Cal. App. 4th 1284,

9   1288, 6 Cal. Rptr. 2d 386 (1992).

10       Summary judgment is warranted where, as here, undisputed facts show that

11   the principal has "no regular, direct dealings" with its agent, and "no say

12   whatsoever in how the [agents] operate their day-to-day businesses." *Emery*, 95

13   Cal. App. 4th at 960; *accord Cislaw*, 4 Cal. App. 4th at 1297.  As established

14   above, Plaintiffs had no regular communications with Defendants with respect to

15   licensing during the Actionable Period and beyond (with communications coming

16   decades apart at times).  (UF Nos. 12-16.)

17       For instance, Roberts testified as follows:

18       *Q. [D]id you ever have any kind of communication with [Defendants]*

19           *telling them how they should go about trying to license your name*

20           *or identity or likeness?*

21       *A. No.*

22       *Q. Did you ever assert any control over what [Defendants] did in*

23           *terms of licensing?*

24       *A. No.*

25       *Q. Do you have any right to control what [Defendants do] in terms of*

26           *licensing? . . .*

27       *A. I don't think so.  I don't know.  I guess that's the answer.*

28       *Q. And you've never tried to exert that kind of control.*

LATHAM&WATKINS LLP   LA\2607511.9
ATTORNEYS AT LAW
LOS ANGELES
13
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CV11-03118 RGK (FFMx)

1    *A. No.*

2    (Roberts Dep. 115:17-116:10.)

3       Plaintiffs cannot come forward with any evidence suggesting that they

4    exercised any actual supervision or provided any direction as to the "means and

5    manner" of Defendants' purported licensing duties.  Plaintiffs cannot point to any

6    written document or oral communication reflecting, or even suggesting, that the

7    parties reached any understanding regarding the essential terms of any licensing

8    agency relationship, such as:  (i) what Defendants were required to do; (ii) how

9    Defendants were to do it; (iii) the length of the engagement; (iv) how much money

10   Plaintiffs would receive; (v) Defendants' commission; (vi) whether Defendants had

11   exclusive or nonexclusive rights; or (vii) how to terminate the engagement.

12   Plaintiffs cannot identify even the most basic contours of the licensing relationship

13   that both sides purportedly entered into.

14       Realizing that they did not have or exercise any actual control over

15   Defendants, Plaintiffs attempt to rely instead on their latent "ability to terminate

16   their membership with the NFLPA, revoke their permission to license their identity

17   and/or stop paying dues to the NFLPA," to establish the requisite control over

18   Defendants' licensing activities.  (RJN, Ex. L at 14:6-16.)  Such bases for control

19   are directly refuted by Plaintiffs' membership history and sworn deposition

20   testimony.

21       First, Plaintiffs' claims that they had the ability to "terminate their

22   membership" and "stop paying dues" are ironic, considering that Parrish, Grant,

23   and Roberts were not members of the NFLPA during the Actionable Period.  (UF

24   Nos. 5 & 6.)  Moreover, Cobb and Jones explicitly rejected any connection

25   between their NFLPA membership and any representations regarding licensing.[9]

26   _____

[9]      Additionally, Cobb and Jones could not do anything to "terminate" their
27   membership.  Their membership instead expires naturally on a date certain one
     year from the date of their payment of dues.  (Collins Decl. ¶ 8.)  It is the right to
28   "immediately discharge" that is probative of control which is entirely lacking here.
     *See Michelson v. Hamada*, 29 Cal. App. 4th 1566, 1580, 36 Cal. Rptr. 2d 343

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

LA\2607511.9                                   14                    DEFENDANTS' MOTION FOR
                                                                    SUMMARY JUDGMENT
                                                                    CV11-03118 RGK (FFMx)

1  (UF No. 7.)  Second, as established, none of the Plaintiffs ever gave Defendants
2  "permission to license their identity," that they could subsequently "revoke" to
3  terminate their relationship.  (UF No. 8-11.)  In fact, Parrish and Roberts believe
4  there is nothing they can do to end their relationship with Defendants:

5      *Q. Are there things you could do to stop being a member of the*
6          *NFLPA as a retired player?*
7      *A. I'm not aware of what that would be.*
8      *Q. Is it your understanding that you will be a – a member of the*
9          *NFLPA as a retired player until you die?*
10     *A. Yes.*

11  (Roberts Dep. 34:2-8, *accord id.* at 33:7-34:1, 124:9-18.)

12     *Q. [Y]our position is that all retired players are members of the*
13         *NFLPA for purposes of representation in licensing, even if they*
14         *never pay dues in their lifetimes; is that correct?*
15     *A. Yes.*

16  (Parrish Dep. 74:7-11.)  Plaintiffs contend that they are stuck in a perpetual
17  relationship with Defendants, which they are powerless to divorce themselves
18  from.  This lack of control further negates any possibility of an agency
19  relationship.[10]

20      Because Plaintiffs—stripped of their counsel's unsupported allegations—can
21  show *no* indicia of control over their purported licensing relationship with
22  Defendants, their claims fail as a matter of law.

23

24

___

25  (1994); *Hillen v. Indus. Accident Comm'n*, 199 Cal. 577, 582 (1926).  Cobb and
    Jones' ability to not renew their membership the following year does not show any
26  right to control Defendants' *immediate* activities.
    [10]   Plaintiffs' claims are further belied by their complaints about their *lack of*
27  *control* over the NFLPA and its operations.  For example, Grant has complained
    that "we have no vote or 'say' in our retired finances [sic] or affairs" and that
28  "RETIRED PLAYERS . . . CANNOT FIRE" the Executive Director of the
    NFLPA.  (Schecter Decl., Ex. W.)

**c.    Defendants Did Not Consent To Act As Plaintiffs' Licensing Agents.**

As to the final essential element of an agency relationship, Plaintiffs cannot present any evidence of a manifestation by Defendants demonstrating their consent to act as Plaintiffs' marketing agents subject to their control.  *See St. Paul Ins. Co. v. Indus. Underwriters Ins. Co.*, 214 Cal. App. 3d 117, 122, 262 Cal. Rptr. 490 (1989).  To the contrary, from the filing of the *Adderley* action—more than four years prior to the filing of Plaintiffs' initial complaint—Defendants have steadfastly, affirmatively, explicitly, openly, and publicly repeated, in no uncertain terms, in court documents and elsewhere that they have no duty to Plaintiffs for purposes of licensing.  (UF No. 23.)  This is undisputed notice that Defendants never consented to act as Plaintiffs' purported licensing agents during any point of the Actionable Period.  Plaintiffs understood Defendants' position in *Adderley* that they did not represent former players for purposes of licensing, whether or not they had a GLA.  (UF Nos. 19-21.)  Besides barring the creation of any agency relationship, Defendants' consistent and unequivocal renunciation of any duty to Plaintiffs would effectively terminate any purported agency relationship.  *See* Cal. Civ. Code § 2355 ("An agency is terminated, as to every person having notice thereof, by . . . The agent's renunciation of the agency.").

Apart from their consistent denial of duty, Plaintiffs can point to no manifestations by Defendants relevant to establishing a licensing agency relationship.[11]  Defendants have not taken any action on behalf of Plaintiffs with

---

[11]    At most, Plaintiffs can point to are gratuitous actions taken to benefit former players in general.  Specifically, Defendants "may receive requests from third parties seeking to identify players who potentially might be interested in licensing opportunities or in making personal appearances.  Defendant[s] may from time to time suggest players for these third parties to contact, but [Defendants] do not, and are not authorized to, market retired players."  (Schecter Decl., Ex. N at 10, Ex. O at 18-19.)  Such gratuitous assistance, without any legal obligation, cannot form the basis of an agency relationship:  "To permit a finding of agency upon this evidence would be, in effect, to hold that one who performs a mere favor for another, without being subject to any legal duty of service and without assenting to any right of control, can be an agent. This is not the law."  *St. Paul*,  214 Cal. App. 3d at 122; *accord Violette v. Shoup*, 16 Cal. App. 4th 611, 620, 20 Cal. Rptr. 2d

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

LA\2607511.9

16

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CV11-03118 RGK (FFMx)

1    respect to licensing.  (UF No. 31.)  In particular, Defendants have not received any

2    request from any licensee to reach out to Parrish, Grant, Roberts, Cobb, or Jones

3    during the Actionable Period.  (UF No. 30.)  The uncontroverted facts establish

4    that Defendants never consented to act as Plaintiffs' licensing agents.

5                    **d.    Plaintiffs Are Not In Privity With NFL PLAYERS.**

6           Apart from the glaring defects described above, Plaintiffs fail to connect

7    their allegations to any legal relationship between themselves and Defendant NFL

8    PLAYERS sufficient to give rise to an agency relationship or fiduciary duties.

9    Plaintiffs have no privity with NFL PLAYERS, and Plaintiffs' theory, based

10   entirely on (bare and presumed) membership in the *NFLPA*, does nothing to show

11   Plaintiffs' manifestation of assent for *NFL PLAYERS* to represent them (or NFL

12   PLAYERS' consent).  (FAC ¶ 20; Collins Dep. 185:6-21.)  NFL PLAYERS is not

13   involved in any efforts to have former players pay membership dues (Schecter

14   Decl., Ex. O at 26-27), and there is no demonstrable connection between NFLPA

15   members and NFL PLAYERS giving rise to fiduciary duties.  An additional

16   unjustified leap of logic is required to suggest that NFL PLAYERS has a duty to

17   these Plaintiffs.

18              **2.    Plaintiffs Cannot Establish A Breach Of Fiduciary Duty.**

19          Besides the lack of any cognizable licensing agency relationship, summary

20   judgment also should issue because there was no breach of any purported fiduciary

21   duty arising from the purported licensing agency relationship during the

22   Actionable Period.

23          When asked to identify Defendants' wrongful act or omission with respect to

24   licensing, Plaintiffs point only to a failure to compensate them "for appearing in

25   video games."  (UF No. 24.)[12]  But Plaintiffs have no competent evidence (i) that

26

27   358 (1993) ("A person does not become the agent of another simply by offering
     help or making a suggestion.").

28   [12]     Roberts also answered that he "is informed and believes that his image was
     also used in a video being played at the Epcot Center in Florida for which he was

1  they have appeared in video games (*they did not*), (ii) that Defendants authorized

2  Plaintiffs' appearance in the games (*they did not*), or (iii) that Defendants received

3  any revenues from such appearances (*they did not*).  Plaintiffs' basis for this

4  allegation is limited to second-hand accounts from friends and family members,

5  who claim to have "seen them" in various versions of Electronic Arts, Inc.'s

6  ("EA") Madden NFL video game franchise.  (UF Nos. 27 & 28.)  Plaintiffs'

7  unsubstantiated hearsay cannot create a triable issue of fact.  *See Blair Foods, Inc.*

8  *v. Ranchers Cotton Oil*, 610 F.2d 665, 667 (9th Cir. 1980).

9        Moreover, Plaintiffs have no factual basis for claiming that these alleged

10  breaches occurred during the Actionable Period.[13]  Even the hearsay statements on

11  which they rely plainly relate to purported uses of their image rights from before

12  the Actionable Period.  (UF No. 27 (citing Cobb Dep. 128:24-129:2 (referring to

13  use of the 1981 Cincinnati Bengals in the "2004 edition" of Madden as the only

14  purported use of his image that he is aware of); Roberts Dep. 88:14-89:4

15  (admitting he is unable to testify whether the hearsay statements regarding his

16  appearance in Madden was within the past five or even ten years); Parrish Dep.

17  99:7-20 (referring to his appearance in Madden as shown "in the documents of the

18 _____

never compensated."  (UF No. 25.)  But Roberts never saw this video, and
19  attributed it to AT&T, not Defendants.  (*Id.*)

20        Likewise, after discovery, it is evident that Parrish's claim that he has not
been "compensated" for appearing on trading cards (UF No. 26) did not arise
21  within the Actionable Period.  Parrish's allegation relates to cards he receives in
the mail from individual fans, which he voluntarily signs and returns.  (Parrish
22  Dep. 112:10-113:3.)  Without any factual basis, he testified that he "assumed" that
the NFLPA had a part in deals with card companies for which he expects
23  compensation.  (*Id.* at 87:10-18.)  This assumption is false and entitled to "no
weight" on summary judgment.  *Taylor v. List*, 880 F.2d 1040, 1045 & n.3 (9th
24  Cir. 1989).  Parrish's image has not been used, or authorized for use, in trading
cards at any point during the Actionable Period.  (*See* Santos Decl. ¶ 6.)  There is
25  no evidence that a new Parrish trading card has been made in more than forty
years.

26  [13]     As to the only breach alleged in this case—the lack of compensation from
Madden videogames—Plaintiffs have not pointed to any new contracts between
27  Defendants and EA.  Instead, they point solely to license agreements entered into
prior to the Actionable Period.  (Santos Dep. 57:20-59:11, 62:20-63:12 (asking
28  about EA License Agreements dated December 8, 2004, January 12, 2006, and
April 25, 2006).)

LATHAM&WATKINS LLP   LA\2607511.9
ATTORNEYS AT LAW
LOS ANGELES

18

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CV11-03118 RGK (FFMx)

1    *Adderley* case [covering the period from February 14, 2003 to February 14,

2    2007]").)  Plaintiffs cannot identify a single relevant breach purportedly occurring

3    since April 13, 2007.[14]

4          Even if Plaintiffs' naked assertion that they "appear[ed] in video games"

5    could be credited, there is no evidence that Defendants had any role in that

6    appearance.  Defendants have not received any revenue related to the use of

7    Plaintiffs' image rights.  (UF No. 29.)  There is simply no evidence that

8    Defendants breached any purported duty to Plaintiffs.

9    **IV.**    **CONCLUSION**

10         Defendants respectfully request the Court enter summary judgment on

11    Plaintiffs' claims in favor of Defendants.

12    Dated:  April 18, 2012          LATHAM & WATKINS LLP

13                 By  /s/ Daniel Scott Schecter

14                    Daniel Scott Schecter
                     Attorneys for Defendants

15

16

---

17    [14]      Even if Plaintiffs somehow could demonstrate breaches during the Actionable Period (which they have not done, and cannot do), such a showing

18    would be unavailing, as claims accrue upon the first purported breach in a fiduciary/confidential relationship and continuing breaches do not create new

19    causes of action.  *See Intermedics, Inc. v. Ventritex, Inc.*, 822 F. Supp. 634, 649, 653 (N.D. Cal. 1993) (stating that it is "the first real breach . . . in the

20    confidential/fiduciary relationship that gives rise to the duty" to protect one's legal rights; "it is *any* justiciable breach . . . that gives rise to the opportunity to timely

21    use the judicial process to protect plaintiff's interest in maintaining or restoring the integrity of the relationship"); *Whittaker Corp. v. Execuair Corp.*, 736 F.2d 1341,

22    1345 (9th Cir. 1984) ("breach of confidence is not a continuing tort . . . the cause of action arises but once, and recovery for the wrong is barred . . . unless the statute

23    has been effectively tolled"); *see also Noggle v. Bank of Am.*, 70 Cal. App. 4th 853, 860, 82 Cal. Rptr. 2d 829 (1999) (rejecting the claim for a "continuing fiduciary

24    duty (by its continuing failure to invest in a manner that would have benefited the remaindermen over their parents)" because "This argument . . . proposes a rule that

25    would permit a beneficiary to wait forever to pursue a claim.").  *See also Michelson*, 29 Cal. App. 4th at 1581 ("Confidential and fiduciary relations are, in

26    law, synonymous."); *Barbara A. v. John G.*, 145 Cal. App. 3d 369, 383, 193 Cal. Rptr. 422 (1983); *Twomey v. Mitchum, Jones & Templeton, Inc.*, 262 Cal. App. 2d

27    690, 708, 69 Cal. Rptr. 222 (1968); *Gerhardt v. Weiss*, 247 Cal. App. 2d 114, 116, 55 Cal. Rptr. 425 (1966) ("An agent is classified by the law as a fiduciary and

28    holds a confidential relationship to his principal."); *Vai v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 56 Cal. 2d 329, 338, 15 Cal. Rptr. 71 (1961).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

LA\2607511.9

19

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CV11-03118 RGK (FFMx)