JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-03118-RGK (FFMx) | Date | May 22, 2012 |
|---|---|---|---|
| Title | BOB GRANT et al. v. NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION et al. | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Sharon L. Williams | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:**   (IN CHAMBERS) Order Re: Defendants' Motion for Summary Judgment (DE 52)

## I.   INTRODUCTION

On April 13, 2011, Bob Grant ("Grant"), Dr. Clinton Jones ("Jones"), Walter Roberts, III ("Roberts"), Marvin Cobb ("Cobb"), and Bernard Parrish ("Parrish") (collectively, "Plaintiffs") filed a Complaint against the National Football League Players Association ("NLFPA") and National Football League Players Inc. ("Players Inc.") (collectively, "Defendants"). On June 10, 2011, Plaintiffs filed a First Amended Complaint ("FAC") alleging claims for breach of fiduciary duty and an accounting.

On September 19, 2011, this Court denied Defendants' Motion to Dismiss the FAC. Presently before the Court is Defendants' Motion for Summary Judgment as to Plaintiffs' FAC.

For the following reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment.

## II.   FACTUAL BACKGROUND

Plaintiffs are retired National Football League ("NFL") players. The NFLPA is the labor union for NFL players. Players Inc. is a for-profit corporation, which is majority owned by the NFLPA.

Defendants engage in a variety of group licensing activities on behalf of current and retired NFL players through agreements with apparel, collectible, and video game distributors. Such licensing agreements generate royalty revenues, which are then distributed to players

who have signed a Group Licensing Authorization form ("GLA"). None of the Plaintiffs have signed a GLA during the period covered by this case.

Plaintiffs allege that from April 2007 to 2011 Defendants failed to seek licensing opportunities for Plaintiffs and failed to accurately distribute royalty income received in violation of their fiduciary duties.

## III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is proper only where "there is no genuine issue as to any material fact and that the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Upon such showing, the court may grant summary judgment "on all or part of the claim." Fed. R. Civ. P. 56(a).

To prevail on a summary judgment motion, the moving party must show that there are no triable issues of material fact as to matters upon which it has the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). On issues where the moving party does not have the burden of proof at trial, the moving party is required only to show that there is an absence of evidence to support the non-moving party's case. *See id.* at 326.

To defeat a summary judgment motion, the non-moving party may not merely rely on its pleadings or on conclusory statements. Fed. R. Civ. P. 56(e). Nor may the non-moving party merely attack or discredit the moving party's evidence. *Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983). The non-moving party must affirmatively present specific admissible evidence sufficient to create a genuine issue of material fact for trial. *See Celotex Corp.*, 477 U.S. at 324.

## IV. DISCUSSION

Defendants move for summary judgment on both of Plaintiffs' claims. The Court will discuss each claim in turn.

### A. Breach of Fiduciary Duty

In order to succeed on their claim for breach of fiduciary duty, Plaintiffs must demonstrate the existence of a fiduciary relationship between themselves and Defendants, breach of that duty by Defendants, and resulting damages. *See Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 820-21 (2011) (citing *Shopoff & Cavallo LLP v. Hyon*, 167 Cal. App. 4th 1489, 1509 (Ct. App. 2008)).

#### 1. *Existence of a Fiduciary Relationship*

Plaintiffs argue that a fiduciary relationship exists between the parties because Defendants are the agents of Plaintiffs for the purposes of arranging licensing agreements. Plaintiffs' argument has two components: first, the NFLPA is Plaintiffs' agent by virtue of their membership in the organization and second, Players Inc. is also Plaintiffs' agent by virtue of the relationship between the NFLPA and Players Inc.

An agency relationship exists when the principal indicates that he wishes the agent to act on his behalf and the agent agrees to act in such a manner subject to the control of the principal. *Edwards v. Freeman*, 34 Cal. 2d 589, 592 (1949) (citing Restatement (First) of Agency (1933) §1). An agency relationship may be implied from the conduct and

circumstances between the parties. *Borders Online, LLC v. State Bd. of Equalization*, 129 Cal. App. 4th 1179, 1189 (Ct. Ap. 2005). Normally the existence of an agency relationship is a question of fact. *See Ward v. Mgmt. Analysis Co. Emp. Disability Ben. Plan*, 135 F.3d 1276, 1284 (9th Cir. 1998), *rev'd on other grounds*, *UNUM Life Ins. Co. of Am. v. Ward*, 526 U.S. 358 (1999).

Defendants argue that none of the Plaintiffs entered into an agency relationship with the NFLPA, let alone Players Inc., as they never indicated a desire for the NFLPA to act as their agent, Plaintiffs had no ability to control the NFLPA's licensing activities, and the NFLPA did not consent to acting as Plaintiffs' agent. Because some of the evidence is unique to each Plaintiff, the Court will examine the facts relevant to whether each Plaintiff entered into an agency relationship with the NFLPA and then whether any such relationships also include Players Inc. by virtue of the relationship between Defendants.

      a.    *Bob Grant*

Grant argues that he indicated his desire to enter into an agency relationship with the NFLPA through his membership in the organization. Retired NFL players, such as Plaintiffs, receive two years of free membership in the NFLPA immediately upon retiring from the NFL, after which point they must pay annual dues in order to remain members. (FAC Ex. A, § 2.11.) The NFLPA waives membership dues for players who register and attend the annual former players convention. (Schecter Decl. Ex. G, 82:1-10.) Grant has not paid membership dues since September 1993, which means that his membership expired in September 1994. (Collins Decl. ¶ 10.) There is no evidence that Grant paid membership dues or had his membership dues waived during the relevant time period. Therefore Grant was not a member of the NFLPA during the pertinent time period and he may not use his membership in the NFLPA to establish an agency relationship.

Plaintiff puts forth no evidence that Grant otherwise manifested a desire to enter into an agency relationship with the NFLPA for licensing purposes. Some sort of manifestation by the principal of his intention to enter into an agency relationship is necessary for an agency relationship to arise. *St. Paul Ins. Co. v. Indus. Underwriters Ins. Co.*, 214 Cal. App. 3d 117, 122 (Ct. App. 1989) (citing Restatement (First) of Agency (1933) §1); *see also Did Bldg. Servs., Inc. v. NLRB*, 915 F.2d 490, 496 n.5 (9th Cir. 1990). Plaintiffs' unsupported allegations that Grant intended to enter into an agency relationship are not enough to defeat a Motion for Summary Judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Even if the Court were to find that Grant manifested a desire for the NFLPA to act as his agent, the Court notes that no agency relationship can be found in the absence of evidence that Grant had the right to control the actions of the NFLPA. *See Michelson v. Hamada*, 29 Cal. App. 4th 1566, 1579 (Ct. App. 1994) (noting that control is a decisive factor in establishing an agency relationship). Evidence of the right to control can be found if the principal has the right to immediately terminate the agent or direct the agent's daily operations. *Id.* Plaintiffs point to no evidence that Grant, or any of the Plaintiffs, had the right to control the actions of the NFLPA. Plaintiffs' unsupported argument that they could withdraw their membership from the NFLPA at any time because it is a private organization are insufficient. *See Celotex Corp.*, 477 U.S. at 324. The right of control is even weaker in the case of Grant, where this is no evidence that he was even a member of the NFLPA during the relevant time period.

Statements by NFLPA employees that the organization represents all retired NFL players for licensing purposes do not, as Plaintiffs suggest, show that Grant, or any of the other Plaintiffs, indicated a desire for the NFLPA to act on their behalf. (*See, e.g.*, Blecher

Decl. Ex. 10, 57:15-58:5 and *Id.* at Ex. 11, 44:20-45:1.) At best, this evidence indicates consent by the NFLPA to enter into an agency relationship with Plaintiffs. However, such evidence alone is not enough to create a genuine issue as to whether Grant and the NFLPA were in an agency relationship. Therefore Plaintiffs have not presented a factual question as to whether Grant and the NFLPA were in an agency relationship that would trigger any fiduciary duties.

      b.  *Walter Roberts*

Roberts did not pay dues to the NFLPA within the relevant time period nor is there evidence that his membership fees were waived. (Schecter Decl. Ex. C, 125:8-22 and Collins Decl. ¶ 12.) Therefore an agency relationship could not have arisen between him and the NFLPA on the basis of his membership in the organization. Nor did Roberts ever communicate to the NFLPA that he wished for them to represent him in licensing arrangements. (Schecter Decl. Ex. C, 117:25-118:9.) The fact that Roberts has heard from his friends that his likeliness has been used in video games is not evidence that he indicated a desire for the NFLPA to act as his agent.

Plaintiffs offer no affirmative evidence of steps that Roberts took to manifest his desire for the NFLPA to act on his behalf as an agent for licensing agreements. Furthermore, as discussed above, there is no evidence that Roberts had the right to control the actions of the NFLPA in regards to licensing agreements. Without such evidence, the Court cannot find a factual issue as to whether an agency relationship, and the resulting fiduciary duties, existed between Roberts and the NFLPA.

      c.  *Bernard Parrish*

Parrish has not paid membership dues since April 2005 and therefore his membership in the NFLPA expired in April 2006. (Blecher Decl. Ex. 4, 65:4-22.) There is no evidence that Parrish had his membership fees waived during the relevant time period. In the absence of any facts tending to show he was a member during the pertinent period, Parrish may not use his membership in the NFLPA to establish an agency relationship.

Although Plaintiffs point to evidence that Parrish had conversations with employees of the NFLPA about licensing agreements, there is no indication that Parrish used these conversations to express a desire for the NFLPA to enter into licensing agreements on his behalf. Without such evidence, Parrish cannot create a factual issue as to whether he ever indicated a desire for the NFLPA to represent him in licensing agreements.

Additionally, even if the Court were inclined to find a genuine issue of fact as to whether Parrish manifested an intent for the NFLPA to act as his agent, the absence of evidence regarding his ability to control the terms of the relationship is detrimental to his attempt to create a factual question as to the existence of an agency relationship. The Court finds there is no factual issue as to the existence of an agency relationship and the fiduciary duties it creates.

      d.  *Clinton Jones*

Jones appears to have been a member of the NFLPA for at least part of the relevant time period. However, the Court finds that this fact alone is not enough to create a genuine factual issue as to the existence of an agency relationship.

First, Jones never indicated in any way that he intended his membership in the NFLPA to signal a desire to enter into an agency relationship for purposes of licensing agreements. Jones never signed a GLA indicating a desire to enter into an agency relationship with the NFLPA or Players Inc. regarding licensing. (Schecter Decl. Ex. B, 33:10-34:14.) Additionally, he does not recall ever having a conversation with the NFLPA about licensing agreements. (*Id.* at Ex. B, 35:9-38:22.) Jones admits that he never gave the NFLPA permission to use his likeness in any manner. (*Id.* at Ex. B, 72:12-15.)

Second, as discussed above, even if the Court were to find an issue of fact as to whether Jones did indicate a desire for the NFLPA to act on his behalf in licensing agreements, there is no evidence that he, or any of the Plaintiffs, had the right to control the actions of the NFLPA. Without this evidence, the Court cannot find a genuine issue of fact as to whether Jones and the NFLPA entered into an agency relationship that would trigger any fiduciary duties.

e.   *Marvin Cobb*

Cobb, like Jones, also appears to have been a member of the NFLPA during at least part of the relevant time period. However, this fact alone is not enough to create a genuine factual issue as to whether an agency relationship exists between the parties.

First, there is no evidence that Cobb ever manifested an intent to enter into an agency relationship with the NFLPA. Cobb stated in his deposition that he never gave permission for the NFLPA or Players Inc. to represent him in licensing agreements. (Schecter Decl. Ex. A, 130:9-23.) During the relevant time period, Cobbs also never signed a GLA indicating a desire to enter into an agency relationship with the NFLPA regarding licensing. (*Id.* at Ex. A, 88:6-15.) Lastly, Cobb admitted that for the past five or six years he has been under the impression that the NFLPA did not represent him in licensing agreements (*Id.* at Ex. A, 135:1-13.)

Second, as discussed above, even if the Court were to find a factual issue as to whether Cobb indicated a desire for the NFLPA to act as his agent, there is no evidence that he had any right to control the actions of the organization in regard to licensing activities. In the absence of any such evidence the Court cannot find a factual issue as to whether there was an agency relationship between Cobb and the NFLPA that would trigger any fiduciary duties.

In light of the foregoing, the Court finds that Plaintiffs fail to create a factual issue as to the existence of a fiduciary relationship between themselves and the NFLPA.

f.   *Players Inc. and the Plaintiffs*

Plaintiffs' claim that Players Inc. owes them fiduciary duties is premised on the existence of an agency relationship between themselves and the NFLPA, which they believe creates an agency relationship between themselves and Players Inc. As the Court finds that there is no factual issue as to the existence of an agency relationship between Plaintiffs and the NFLPA for purposes of licensing agreements, it follows that there is no factual issue as to the existence of an agency relationship between Plaintiffs and Players Inc. regarding licensing based on the theory articulated by the Plaintiffs.

Additionally Plaintiffs point to no evidence that they separately manifested a desire for Players Inc. to act on their behalf as agent. Evidence that Players Inc. had access to player information and sought marketing opportunities for current and retired players does not demonstrate any intent by the Plaintiffs to enter into an agency relationship. There is no

evidence that Plaintiffs and Players Inc., independently of the NFLPA, entered into an agency relationship giving rise to fiduciary duties.

Therefore, Plaintiffs also fail to create a factual issue as to the existence of fiduciary duties between themselves and Players Inc.

### 2. *Breach of Fiduciary Duty and Damages*

The failure of Plaintiffs to create a factual issue as to the existence of an agency relationship and resulting fiduciary duties is detrimental to their claim for breach of fiduciary duty. Therefore the Court **grants** Defendants' Motion for Summary Judgment as to Plaintiffs' claim for breach of fiduciary duty.

### B. Accounting

Plaintiffs' second claim for accounting is not a separate claim that can remain in the absence of a claim for wrongdoing against Defendants. *Union Bank v. Superior Court*, 31 Cal. App. 4th 573, 593-94 (Ct. App. 1995). Therefore, the Court must also **grant** Defendants' Motion for Summary Judgment as to Plaintiffs' claim for an accounting.

## V. CONCLUSION

In light of the foregoing, the Court hereby **GRANTS** Defendants' Motion for Summary Judgment.

**IT IS SO ORDERED.**

|  | : |  |
|---|---|---|
| Initials of Preparer | slw |  |